In the Matter of the DISTRICT ATTORNEY OF KINGS COUNTY, Respondent, v ANGELO G. (ANONYMOUS) et al., Appellants.

Second Department, July 11, 1975

*Michael S. Washor (Arnold E. Wallach* on the brief), for appellants.

*Eugene Gold, District Attorney (Elliott Schulder* of counsel), respondent *pro se.*

HOPKINS, Acting P. J. The District Attorney of Kings County applied to the Supreme Court, Kings County, for orders directing the appellants to furnish exemplars of their handwriting. Service of the motion and supporting papers was made on the appellants and, upon the return day, they appeared in opposition. The application of the District Attorney was granted, and orders were entered which require the appellants to appear at the office of the District Attorney to provide handwriting exemplars; the orders further provide that counsel to the appellants be invited to attend at the time of such disclosure. The appellants appeal, urging that the court was powerless to grant such an order, and that, in any event, the grounds alleged by the District Attorney were insufficient to justify the granting of such relief. The District Attorney, in return, urges that the orders are not appealable. We hold that the orders are appealable and should be affirmed.

The District Attorney alleged in his applications to the court that the appellant Jacqueline G. (Anonymous), acting in concert with the other appellants, had reported seven motor vehicle accidents involving property damage to the Consolidated Mutual Insurance Company and that such accidents had in fact not occurred; and that, in addition, the appellants Angelo G. (Anonymous) and Anthony R. (Anonymous) were employed by the insurance company. The moving papers further alleged, based upon information supplied by the Insurance Crime Prevention Institute, that records of six of the seven "accidents" were missing from the insurance company's files, and that, through the procurement of the appellants, the insurance company had issued 12 drafts to various individuals, amounting to approximately $25,000, on which drafts the names of the appellants had appeared as indorsees. The District Attorney further alleged that one draft bearing the

signature "James Gordon", and another draft bearing the signature of "Jacqueline G." (Anonymous) were signed by the same person, relying upon a handwriting analysis performed for the Insurance Crime Prevention Institute; moreover, the analysis indicated that two other signatures attributed to Jacqueline G. (Anonymous) as indorser were not signed by the same individual.

Upon the strength of these allegations, and after an appearance before the court by the District Attorney and counsel for the appellants, the court granted the application. Upon this appeal by the appellants, they contend that the orders requiring them to appear in the District Attorney's office and to supply handwriting exemplars violated their constitutional rights under the Fourth and Fourteenth Amendments to the Federal Constitution, and section 12 of article I of the State Constitution. The District Attorney contends preliminarily that no appeal lies from such orders. We treat first the question whether this court has jurisdiction to entertain the appeal.

The District Attorney claims correctly that the right to appeal in criminal proceedings is narrowly limited by statute, and that, in general, intermediate appeals are precluded, except upon the review of the final judgment (cf. CPL 450.10, 450.15). However, it is undisputed that there is no criminal action or criminal proceeding extant. The appellants have neither been arrested nor indicted; an accusatory instrument has not been filed against them. By definition, then, no criminal action or proceeding has been commenced (CPL 1.20, subds 16, 17, 18; General Construction Law, § 18-a). Nor does the title of this proceeding include the name of the People of the State of New York—an element to be considered in determining the nature of the proceeding *(City of Buffalo v Murphy,* 228 App Div 279, 285).[1] We therefore conclude that this proceeding is essentially civil in character. "A 'civil judicial proceeding' is a prosecution, other than a criminal action, of an independent application to a court for relief" (CPLR 105, subd [d]; see, also, CPLR 105, subd [b], CPLR 103, subd [b]). As a final order or judgment in a special proceeding, the orders are appealable (CPLR 5701, subd [a], par 1). Orders

---

1. In *Matter of McGoldrick v Downs* (184 Misc 168, 170–171, affd 269 App Div 863), the court said: "A criminal prosecution is a proceeding which is prosecuted by the State against a person charged with a public offense to obtain punishment therefor." This proceeding, of course, does not fit this definition.

in other proceedings having quasi-criminal effects, but not truly criminal actions, have been reviewed on appeal (see, e.g., *Carlisle v Bennett,* 268 NY 212, 218; *Matter of A'Hearn v Committee on Unlawful Practice of Law,* 30 AD2d 47, 55–56, affd 23 NY2d 916, 918, cert den 395 US 959; *Matter of Weintraub v Fraiman,* 30 AD2d 784, affd 24 NY2d 918; *Matter of Narcotic Addiction Control Comm. v Couloufacos,* 29 AD2d 199, 202).

Accordingly, we treat on the merits the claim of the appellants that their constitutional rights have been invaded under compulsion of the orders. The appellants contend first that to force them to give handwriting exemplars violates the Fourth Amendment to the Federal Constitution. That contention cannot be sustained under the recent decisions of the Supreme Court (see *United States v Dionisio,* 410 US 1; *United States v Mara,* 410 US 19; *Davis v Mississippi,* 394 US 721; *Schmerber v California,* 384 US 757). The Fourth Amendment does not prohibit the taking of handwriting exemplars, for no search or seizure of the person is involved. Identifying physical characteristics may be obtained when neither unlawful detention nor unlawful intrusion into the body is the means employed to secure disclosure. No doubt, the requirement that a person repair on a date certain to the office of the District Attorney for the purpose of giving handwriting samples is a species of detention, since the liberty of the movement of the person, to that extent, is limited. However, if the detention is based on probable cause, evinced by a factual showing to the court for the relief sought, and that relief is determined to be necessary by the court after notice, the detention of the person to the extent indicated is not unlawful in the constitutional sense. Of course, no unlawful intrusion into the body is entailed in the procedure of obtaining handwriting specimens specified in the orders under review.

Nor is the Fifth Amendment violated by the compulsory exhibition of physical characteristics. In *Schmerber v California (supra,* p 764) it was said: "both federal and state courts have usually held that * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testi-

mony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Whether the appellants' rights under the Fourteenth Amendment have been violated depends on testing the means used here under the dictates of due process. As was said recently by Chief Judge BREITEL in *Matter of Pannell v Jones* (36 NY2d 339, 342), due process governs any State action, whether civil or criminal in character, which deprives a person of liberty; the procedural safeguards required will vary according to the circumstances of the case in relation to the governmental function involved and the substance of the individual interest affected. We see no violation of due process under the proceedings initiated by the District Attorney. The appellants were served with the notice of the application and with the supporting papers. They were given the opportunity to oppose the application and to submit any grounds of opposition to the court. The court determined the merits of the application after hearing the appellants. Although the procedure is novel, since it contemplates disclosure prior to a grand jury investigation and constitutes, in a limited sense, prearrest detention (cf. *Terry v Ohio*, 392 US 1; *Davis v Mississippi*, 394 US 721, *supra*), we think it is less stringent and intrusive into the privacy of an individual than a search warrant, for which an application may be made without notice to the person to be searched (CPL 690.35, 690.40, 690.45).

The procedure employed here has been approved in other jurisdictions (see, e.g., *United States v Harris*, 453 F2d 1317, cert den 412 US 927; *Matter of Fingerprinting of M.B.*, 125 NJ Super 115). The question in every case must be whether proper notice of the application has been given to the individual, and whether probable cause for the granting of the relief sought appears in the moving papers. Once these salient requirements have been satisfied, the dictates of due process have been met.

Turning then to the issue raised by the appellants that the papers submitted by the District Attorney in support of his applications were deficient to show probable cause, we find to the contrary of the appellants' contentions. The appellants were sufficiently identified as persons involved in the investigation of a fraud committed on the insurance company, with forgery as an apparent element of the larcenous scheme. It became therefore necessary and proper for the District Attorney to ascertain whether, in fact, the appellants' signatures

appeared on the drafts issued by the insurance company in payment of the fraudulent claims. Handwriting exemplars would assist the District Attorney in his investigation to determine whether the appellants were, in truth, involved in the inducement, preparation or negotiation of the drafts.

For these reasons we reject the District Attorney's contention that we lack jurisdiction to hear these appeals and we affirm the orders of the Criminal Term.

MARTUSCELLO, J. (dissenting). Simply stated, there is no statutory authority for the issuance of the orders requiring the appellants to provide handwriting exemplars at the office of the District Attorney. These orders constitute a mode of pretrial discovery not authorized by statute. The District Attorney does not have the statutory authority to issue a subpoena on his own behalf. The discovery provisions of the CPL do not govern because there is no pending criminal proceeding against these individuals. In addition, the discovery provisions of the CPLR are clearly inapplicable.

The District Attorney argues that the Criminal Term, because it has the power to issue an arrest warrant (CPL 120.10), inferentially has the authority to issue process *short of* formal arrest. No New York case is cited in support of this proposition. On the contrary, in *Matter of Mackell v Palermo* (59 Misc 2d 760), the court, in holding that the District Attorney could not compel a *suspect* to shave off his beard before putting him in a lineup, stated (p 765) that: "the reason compelling a denial of the District Attorney's application, is that the respondent, whose facial hair is sought to be removed, *is not a defendant in any proceeding in this county.* He is merely a suspect against whom the District Attorney has thus far established no probable cause warranting an arrest." It should be emphasized that the District Attorney has not attempted to effect the arrest of any of these individuals.

The District Attorney also argues that these orders are in the nature of search warrants which may be issued pursuant to the court's authority "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it" (Judiciary Law, § 2-b, subd 3). Hence, this "elastic clause" may only be invoked where the court possesses the requisite underlying power or jurisdiction. By statute, a search warrant may be addressed *only to a police officer* (CPL 690.25). A search warrant must direct a

*search* of a described place, premises, vehicle or person (CPL 690.15). The District Attorney seeks, however, to have these individuals appear at his office, not to be searched by police officers, but to compel them to physically *create* evidence which may later be used against them. I am forced to conclude that the Criminal Term does not possess the requisite power or jurisdiction to command such conduct.

Furthermore, it should be noted that, by following this procedure, the District Attorney seeks to circumvent the immunity provisions of the CPL. Had these individuals been subpoenaed to appear before the Grand Jury for the purpose of supplying exemplars, it is clear that they would have received immunity from prosecution (CPL 190.40; CPL 50.10, subd 3). I do not believe that the District Attorney should be permitted to evade this clear statutory mandate.

It is for the Legislature, not the courts, to expand the powers and jurisdiction of the courts. This maxim is especially applicable where individual liberties have been placed in jeopardy, as is the case here. The wisdom of awaiting action by the Legislature is illustrated by the fact that the *ad hoc* procedure followed by the District Attorney does not permit mutuality of discovery and, indeed, lacks procedural safeguards.

I would therefore reverse the orders and deny the motions.

LATHAM, BRENNAN and MUNDER, JJ., concur with HOPKINS, Acting P. J.; MARTUSCELLO, J., dissents and votes to reverse the orders and deny the motions, with an opinion.

Four orders of the Supreme Court, Kings County, all entered January 28, 1975, affirmed, without costs.