THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS VEGA, Appellant.

Second Department, January 19, 1976

*William J. Gallagher (Joel L. Blumenfeld* and *Pauline A. Mullins* of counsel), for appellant.

*Nicholas Ferraro, District Attorney (Kerry J. Katsorhis* of counsel), for respondent.

SHAPIRO, J. The defendant[1] appeals from an order of the Supreme Court, Queens County, dated June 25, 1975, which denied his motion to vacate a prior ex parte order directing that he be turned over to the District Attorney of Queens County to have his beard removed and that thereafter he be placed in a lineup to be viewed by certain witnesses to a number of robberies.

### THE ISSUE.

This appeal raises three questions: (1) May a Justice sitting in the Criminal Term of the Supreme Court in Queens County direct a person who is not named as a defendant in an accusatory instrument charging him with the commission of a crime in Queens County to turn himself over to the District Attorney of that county for the purpose of having his beard removed prior to his being placed in a lineup for possible identification by witnesses as the perpetrator of two robberies in that county? (2) May that court order him placed in a lineup prior to his arrest or to the issuance of an accusatory instrument against him charging him with the commission of a crime in Queens County? (3) Because the defendant is

---

1. We denominate the appellant as "defendant" for the purpose of convenience; in fact he is not a defendant in any proceeding in Queens County.

incarcerated in another county for a crime allegedly committed by him in that county, may he—without being arrested for the Queens County crime or being charged there by any accusatory instrument—be ordered to be placed in a lineup in Queens County?

### PRIOR PROCEEDINGS.

Prior to the filing of this appeal, the defendant's attorney brought an article 78 proceeding in this court to prohibit the enforcement of the order here under review (*Matter of Blumenfeld v Dubin,* 49 AD2d 593). The respondent in that proceeding was the Justice who issued this order. This court dismissed the petition in that proceeding, saying (p 594): "As the petitioner has neither been arrested nor indicted, and as no accusatory instrument has been filed against him, the proceeding is 'essentially civil in character' and the order of June 25, 1975 is appealable (see *Matter of District Attorney of Kings County v Angelo G.,* 48 AD2d 576). Therefore, prohibition to prevent the enforcement of the prior order will not lie (CPLR 7801, subd 1). In dismissing the petition, we do not reach the merits. Our disposition is without prejudice to an application by petitioner for a stay in the event that the petitioner appeals and applies for such relief."[2]

### THE FACTS.

The defendant is confined in the Bronx House of Detention in connection with an offense unrelated to the robberies in Queens County which gave rise to the order appealed from. On May 5 and 12, 1975 the defendant was identified by four persons (from photographs) as the perpetrator of the Queens County robberies. The photographs showed the defendant without a beard. On May 23, 1975, when the defendant was placed in a lineup with others who also wore beards, the persons who had identified him from the photographs were unable to identify him.

On May 30, 1975 the District Attorney of Queens County obtained an ex parte order *inter alia* directing the defendant to be turned over to him for the purpose of conducting a lineup and that the defendant's beard be removed prior to his appearance in the

---

2. While I personally do not agree that the proper procedure is by way of an appeal rather than by an article 78 proceeding, I am bound by that determination. If not constrained by that decision, I would hold that a direct appeal does not lie since in effect it is an intermediate appeal by a defendant in a criminal matter.

lineup. The defendant's motion to vacate that order, which was denied, is the subject matter of this appeal.

## THE LAW.

In *Matter of District Attorney of Kings County v Angelo G.* (48 AD2d 576) this court (MARTUSCELLO, J., dissenting) held that an order of the type here under attack is appealable; that the proceeding, despite its being captioned as a criminal matter, was "essentially civil in character"[3] and that a Criminal Term of the Supreme Court in Kings County had the power to compel certain respondents who were neither in custody nor defendants under an accusatory instrument to supply the Kings County District Attorney with exemplars of their handwriting in connection with his investigation of a suspected insurance fraud involving forgery as an apparent element of a larcenous scheme. Although not all of the members of this court are in accord with the decision in that case, the problem here is essentially different in scope, for it requires our consideration of whether the right not to have one's facial hair shaved (when one is not charged with a crime) is of constitutional dimensions.

The majority in the *Angelo G.* case *(supra)* did not affirmatively pass on the question of whether the Criminal Term had the power to issue the order sought by the prosecutor, absent an arrest of the respondent. They simply rejected the District Attorney's claim that the order was not appealable, and then went on to deal with the question of whether the order under review violated the Fourth or Fifth Amendment rights or the Fourteenth Amendment due process rights of the respondents. It ruled that there was no violation of the Fourth Amendment because there was probable cause, evinced by a factual showing to the court, for the relief sought. It found the Fifth Amendment ban on self incrimination inapplicable on the ground that the relief sought in no way involved the compelling of communications or testimony, but rather made the respondents the source of real or physical evidence, an action which does not violate the constitutional ban. They held that the due process requirement was satisfied because the respondents had been served with notice of the application and the supporting papers and had been given the opportunity to oppose the application and to submit any grounds of opposition to the court. It therefore affirmed the order appealed from.

---

3. The Appellate Division, First Department, citing the *Angelo G.* case *(supra)* has held to the same effect *(Matter of Santangello v People,* 49 AD2d 220).

In contrast to the facts in *Angelo G. (supra)*, we are not here dealing with fingerprinting, measurements, writing or speaking for identification, appearing in court, standing, assuming a stance, walking or making a particular gesture. Nor are we dealing with the taking of a blood sample (see *Schmerber v California*, 384 US 757). We are dealing with a procedure which would deprive the defendant of his constitutionally protected right to determine his personal appearance, a right which various lower Federal courts have placed either within the penumbra of the First Amendment freedom of speech or within the Ninth Amendment rights retained by the people (see *Breen v Kahl*, 419 F2d 1034; *Bishop v Colaw*, 450 F2d 1069; *Arnold v Carpenter*, 459 F2d 939). Other courts have based the right on the "liberty" assurance of the Fourteenth Amendment *(Richards v Thurston*, 424 F2d 1281, 1285) or on the right " 'to be secure in one's person guaranteed by the due process clause' ", but having " 'equal protection' " overlappings *(Arnold v Carpenter, supra*, p 941, n 5; *Massie v Henry*, 455 F2d 779, 783). The recognition of this constitutionally protected right has been followed by holdings that the State bears the burden of establishing substantive justification for any action it may impose which limits that right *(Crews v Cloncs*, 432 F2d 1259, 1264; *Richards v Thurston*, 424 F2d 1281, *supra; Breen v Kahl*, 419 F2d 1034, cert den 398 US 937; *Lindquist v City of Coral Gables*, 323 F Supp 1161).

Another distinction between the action sought to be taken here, the compulsory shaving of the defendant's beard prior to his appearance in the lineup, and the requirement of provision for the furnishing of a handwriting exemplar in the *Angelo G. (supra)* case, is that the latter, since it involves no *alteration of the physical appearance of the suspect,* is like standing, assuming a stance, walking or making a particular gesture. Forcible removal of a beard, by contrast, imposes on the suspect a physical change in his appearance which denies him the right to an immediate return to the form of facial hair which he wore prior to his appearance in the lineup. This distinction has been recognized (cf. *Crews v Cloncs, supra*, p 1264).

The case of *Matter of Mackell v Palermo* (59 Misc 2d 760) is directly in point here. There I denied an application by the District Attorney for an order directing a suspect who was neither under arrest nor the subject of an accusatory instrument in Queens County to shave his beard for a police lineup

so that he could be viewed in a lineup by potential witnesses. I noted (p 765) that the respondent was "merely a suspect against whom the District Attorney has thus far established no probable cause warranting an arrest", and concluded that the court, in such a situation, was without power to issue the order sought by the District Attorney. I added (p 765): "I have no doubt that if this respondent were walking the streets, I would have no authority, merely because the District Attorney suspected him of having committed a vicious crime, to order him into a lineup and to have his beard forcibly removed. I do not see that there is any legal distinction between that situation and the fortuitous circumstance that the respondent happens to be in custody on an entirely unrelated charge. That detention may deprive him of freedom of movement, but it does not destroy any of his other rights as an individual."

## CONCLUSION.

If the District Attorney has probable cause sufficient to sustain an order invading the defendant's constitutional right to determine his facial appearance, he has sufficient probable cause to have the defendant arrested or to obtain an accusatory instrument charging him with the robberies in Queens County. Any one of these courses of conduct on his part will subject the defendant to the jurisdiction of the Criminal Term (see *Matter of Alphonse C. [Morgenthau]*, 50 AD2d 97). It will then be time enough to determine, if such an order is sought, whether there has been shown a substantial State justification for invading the defendant's constitutional right to determine his appearance (see *Crews v Cloncs, supra; Richards v Thurston, supra; Breen v Kahl, supra; Griswold v Connecticut*, 381 US 479, 505). If the District Attorney is unwilling to follow any of those procedures he cannot be permitted to avail himself of the back-door device he seeks to use here.

The order appealed from should therefore be reversed and the defendant's motion granted.

HOPKINS, J. (dissenting). I do not believe that the prosecution should obtain, ex parte, an order directing an individual to appear for a lineup or to be subjected to any proceedings involving his person. Instead, the prosecution should serve proper notice of the application on the individual, thereby providing him with the opportunity to be heard in opposition

(cf. *Matter of District Attorney of Kings County v Angelo G.,* 48 AD2d 576). But I also believe that by making the application to vacate the order the appellant presented the substantive issue to the court, and that the court was accordingly enabled to proceed on the merits. The appeal is therefore properly before us.

This appeal differs from *Matter of District Attorney of Kings County v Angelo G. (supra)* * because the order under review requires a greater intrusion into the personal liberty of the appellant. The right to determine one's appearance is contained, in the first instance, within the personal freedoms guaranteed by the Constitution and cannot be regulated, except by the demonstration of a compelling State interest which cannot be promoted by a less restrictive control (cf. *Bishop v Colaw,* 450 F2d 1069; *Crews v Cloncs,* 432 F2d 1259; *Arnold v Carpenter,* 459 F2d 939; *Breen v Kahl,* 419 F2d 1034, cert den 398 US 937). The question, like so many of a constitutional character, is one of degree. We must view each case in its own setting; the constitutional right of a student to order his personal appearance despite the rule of a school board cannot be equated with the right of an individual who is the subject of investigation arising out of the commission of a crime to maintain his habit of facial appearance if the reasonable demands of the investigation require otherwise.

I do not consider this general area of criminal investigation to be included within the amorphous right to privacy under the Constitution, which right has been limited to the specific situations recently defined in *Matter of Schulman v New York City Health & Hosps. Corp.* (38 NY2d 234). I consider it, rather, as a function of the traditional right of the individual covered by the Fourth Amendment, under which the tests of reasonableness and probable cause for the search are employed (cf. *United States v Praigg,* 336 F Supp 480).

We should not tolerate an attempt to disguise one's appearance in order to escape the detection of a crime (cf. *People v Strauss,* 174 Misc 881). Indeed, in *Smith v United States* (187 F2d 192, cert den 341 US 927), a defendant was compelled to dye his hair so that his appearance would be restored to accord to that which he had presented at the time of the crime. Similarly, defendants under charges have been com-

* The order under review in that case directed the appellants to submit handwriting exemplars to the District Attorney.

pelled to submit to examinations and tests of the intimate parts and recesses of their bodies (see, e.g., *Brent v White*, 398 F2d 503, cert den 393 US 1123; *Blackford v United States*, 247 F2d 745; *United States v Summerfield*, 421 F2d 684; cf. *Huguez v United States*, 406 F2d 366; *Henderson v United States*, 390 F2d 805; see, generally, Ann 171 ALR 1144, and supplements; Ann 22 L ed 2d 909). In all of these cases, however, the defendant was charged with the commission of a specific crime in a pending criminal proceeding.

That a criminal proceeding has not been commenced by an arrest or by the filing of charges is not determinative by itself. If sufficient grounds can be shown, an individual is subject to being produced for tests or for identification procedures *(United States v Harris*, 453 F2d 1317, cert den 412 US 927; *Matter of Fingerprinting of M.B.*, 125 NJ Super 115; *Wise v Murphy*, 275 A2d 205 [Ct of App, Dist Col]; *State v Fierro*, 107 Ariz 479; *Commonwealth v Bumpus*, 290 NE2d 167 [Sup Jud Ct, Mass]). As the perceptive opinion of Judge NEBEKER points out in *Wise v Murphy (supra*, pp 214–216), it is the combination of the circumstances in each case which determines whether, under the Fourth Amendment, the compulsion imposed on the individual is reasonable.

The circumstances may be evaluated by recourse to these factors:

1. The seriousness of the crime under investigation. We would not permit a major intrusion of the person in a case of disorderly conduct, though we might in a case of rape, robbery or murder.

2. The degree of the intrusion requested. We would expect greater reason for a blood test than for a handwriting exemplar; and there are certain intrusions so brutal and excruciating that they violate the ordinary dictates of due process (cf. *Rochin v California*, 342 US 165).

3. The transitory effect of the intrusion. We would weigh the rather unimportant effect of a taking of a hair specimen in different terms from the more permanent effect of shaving a beard or dyeing the hair.

4. The nature of the exigency requiring the intrusion. We would require the prosecution to present sufficient grounds to support probable cause for any intrusion *(Davis v Mississippi*, 394 US 721, 726–727).

5. The reliability of the information sought as a result of

the intrusion. If the information were of slight value in crime detection, the intrusion may not be warranted.

In this case, the prosecution states that the appellant has changed his appearance by growing a beard while confined under an unrelated charge; that three eyewitnesses to a robbery have supplied a description of the perpetrator conforming to the appellant; that the witnesses have identified the appellant as the perpetrator from photographs showing him without a beard; and that they were unable to identify the appellant in a lineup.

The weight of these circumstances, considered in the light of the factors suggested, leads to the following considerations:

1. The crime charged is serious, i.e., robbery.

2. The degree of intrusion is fairly high, but not as productive of unease or pain as searching the cavities of the body, or even a blood test, would require.

3. The effect of the intrusion will be neither transitory nor permanent. That is, the beard will be lost to the appellant only for the length of time necessary to regrow it.

4. The exigency requiring the intrusion is that the appellant has grown a beard since the time of the crimes under investigation, and witnesses, though identifying the appellant from his photographs, cannot make a positive identification because of the appellant's beard.

5. Identification has been considered traditionally as a reliable form of evidence (but cf. Sobel, Eye-Witness Identification, p 13).

I am persuaded by the force of these considerations that the order should be affirmed. If the appellant is the perpetrator of the crime, he should not be able to avoid the issue by preventing an identification; and if he is not, the lineup without the beard will establish his innocence. The embarrassment to him by the shaving of the beard is temporary and the action required is neither discomforting nor painful. Under these facts, the intrusion to the person is justified by the ends of justice.

RABIN, Acting P. J., MARTUSCELLO and CHRIST, JJ., concur with SHAPIRO, J.; HOPKINS, J., dissents and votes to affirm the order in an opinion.

Order of the Supreme Court, Queens County, reversed, on

the law, without costs, motion granted, and ex parte order of the same court, dated May 30, 1975, vacated.