Bernard Dubin, J.
The People move for an order compelling the defendants to submit to the taking of their palm prints by the New York City Police Department.
Defendants herein were indicted by a Queens County Grand Jury on December 9, 1975 and charged with the crime of robbery in that they were alleged to have stolen a sum of money from a McDonald hamburger restaurant. On November 30, the defendants were apprehended in a green Ford van, registration number 513 QLR. Prior to their arrest, another McDonald restaurant had been held up in August by two men who escaped in a green Ford van bearing a similar registration number. During an investigation of this earlier theft, the police department forensic unit uncovered latent palm prints. The People now seek this order compelling the defendants to submit to a palm print examination for the purpose of investigating their possible connection with the first crime.
Counsel for the defendants oppose this application on three grounds: (1) that palm prints have no legal value and,, in effect, constitute a form of harassment; (2) that the court lacks authority to grant such an unusual order; and (3) that such an order, in any event, constitutes a "body search” prohibited by the Fourth and Fifth Amendments.
In researching defendants’ first point, this court notes that legal authorities in general have .shown a uniform lack of interest on the subject of palm prints and it is safe to assume that the topic will never be the major issue of a legal seminar. However, if chapters have not been written on this form of evidence at least there are enough footnotes to furnish judicial guidance. Basically, palm prints are a subordinate branch of dactylography, which is the scientific study of fingerprints. Authorities indicate that all fingerprints leave distinctive ridge outlines which furnish a scientific basis for human identification. Such ridge formations also are present in the palms and these formations are equally valid as a method of *921 identification (5 Am Jur, Proof of Facts, pp 78-82). Thus, in (People v Les, 267 Mich 648), the court held that palm prints are just as valid and accurate as fingerprints and the Federal courts have also upheld this view (cf. Matter of Reardon, 445 F 2d 798). (For additional reported cases, see 28 ALR 2d, p 1127.) Palm prints then are the legal equivalent of fingerprints. Fingerprints, in turn, have been accepted as evidence in New York since the early part of this century (People v Roach, 215 NY 592), and constitutionally permissible (People v Sallow, 100 Misc 447).
Further, our New York statutes recognize the legality of both fingerprints and palm prints. CPL 160.10 imposes on the police a legal duty to take the fingerprints of an arrested person or defendant, particularly one charged with a felony. In addition, the same statute grants a police officer who makes an arrest for any offense the right to take the fingerprints of an arrested person if the police officer '[reasonably suspects that such person is being sought by law enforcement officials for the commission of some other offense”. (CPL 160.10, subd 2, par [c], emphasis added.) In this connection, it should be noted that "Whenever fingerprints are required to be taken pursuant to subdivision one or * * * subdivision two, the photograph and palmprints of the arrested person or the defendant * * * may also be taken.” (CPL 160.10, subd 3, emphasis added.)
Based then on the above, it would follow that the District Attorney’s request rests upon legal grounds and is not for the purpose of harassment.
Defendants next argue that the court lacks authority to grant such an unusual order. They contend that a request for palm prints is not simply an administrative or ex parte matter, but rather one which is investigatory in nature; compelling a person to render evidence against himself. At the very least, it should be the subject of a full, contested hearing. An analysis of this argument shows that the defendants have, in effect, raised two issues: Does the court have the technical authority to grant such an order? And the second issue — if it does, upon what legal grounds may it grant it?
A review of the law in connection with the first question shows that our courts have entertained investigatory applications over a wide range of criminal subjects. They have considered motions for lineups (People v Vega, 82 Misc 2d 718; People v Falco, 67 Misc 2d 520); for blood tests (People v *922 Longo, 74 Misc 2d 905), for surgical operations to recover bullets (People v Smith, 80 Misc 2d 210), and even applications to remove facial hair (Matter of Mackell v Palermo, 59 Misc 2d 760). In virtually all of these cases the court felt it possessed the authority to grant the relief requested. In some instances the court did not even discuss this basic issue of authority and apparently relied on inherent jurisdiction to issue administrative orders. In other cases the court acted under its general powers of jurisdiction, particularly subdivision 3 of section 2-b of the Judiciary Law, which grants a court of record the right "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction”. So, it is clear that the court has authority to make procedural orders.
The second issue is the fundamental one. When may a court grant such an order? In considering this question, a trio of Appellate Division cases have recently indicated that these orders are not to be granted routinely but must satisfy definite legal standards involving jurisdiction and procedure. These three cases are Matter of Alphonse C (Morgenthau) (50 AD2d 97), Matter of District Attorney of Kings County v Angelo G. (48 AD2d 576) and People v Vega (51 AD2d 33). A study of these cases is then necessary to establish guidelines for investigatory orders.
The first case, Matter of Alphonse (supra) dealt with the court’s authority to order a suspect into a lineup. The First Department ruled that a lineup is a limited form of detention. Detention is a creature of statute. Hence, in the absence of statutory authority, whether it be arrest or probable cause to believe that the suspect committed the crime charged, a court lacks authority to issue a detention order.
The second case, which dealt with a request for a suspect’s handwriting sample, concerned itself with the broader constitutional issues involved. However, the appellate court did indicate that probable cause was a sufficient basis to confer jurisdiction on the lower court stating (p 579): "No doubt, the requirement that a person repair on a date certain to the office of the District Attorney for the purpose of giving handwriting samples is a species of detention, since the liberty of the movement of the person, to that extent, is limited. However, if the detention is based on probable cause, evinced by a factual showing to the court for the relief sought, and that relief is determined to be necessary by the court after notice, *923 the detention of the person to the extent indicated is not unlawful in the constitutional sense.” (Emphasis added.)
The final case, People v Vega (51 AD2d 33, supra), dealt with the question of a court’s authority to direct a person, who is not named as a defendant in a Queens accusatory instrument, to turn himself over to the District Attorney of that county for the purpose of both a lineup and having his beard removed prior to that lineup. The defendant in that case was indicted in the Bronx and was a suspect in two Queens robberies. The court ruled, "If the District Attorney has probable cause sufficient to sustain an order invading the defendant’s constitutional right to determine his facial appearance, he has sufficient probable cause to have the defendant arrested or to obtain an accusatory instrument charging him with the robberies in Queens County. Any one of these courses of conduct on his part will subject the defendant to the jurisdiction of the Criminal Term * * * It will then be time enough to determine, if such an order is sought, whether there has been shown a substantial State justification for invading the defendant’s constitutional right to determine his appearance”. (People v Vega, supra, p 38.)
Broadly summarizing the rulings in these cases, it appears that:
(1) An investigatory order which involves an intrusion into one’s liberty is a form of detention.
(2) Detention is statutory in nature and a court must comply with such statutes to obtain jurisdiction.
(3) New York statutes grant jurisdiction in various ways, such as: naming the defendant in an accusatory instrument or making a lawful arrest or having probable cause to believe that the suspect committed the crime charged.
(4) Normally, jurisdiction is a factual question which should not be determined ex parte.
(5) Once a court has jurisdiction, it then may consider in a full hearing the reasonableness and constitutional validity of the People’s application.
Applying these principles to the present case this court finds that jurisdiction exists on at least two grounds. The first is statutory (CPL 160.10, subd 2, par [c]). This section grants a police officer who makes an arrest for an offense the right to secure fingerprints (and palm prints) when he "[Reasonably suspects that such person is being sought by law enforcement *924 officials for the commission of some other offense.” This would apply in the instant case.
The second basis is probable cause. The facts indicate that a common vehicle, associated with the defendants, was used in both crimes. Both stores were held up by two men; the two restaurants were of the same chain. Based on these common grounds, the People have established probable cause to believe that the defendants committed the first robbery.
Jurisdiction having been established, the court turns to the reasonableness of the People’s request. Based on all the facts elicited at this bearing, this court finds that such a palm printing is a normal part of a police officer’s duty (cf. People v Killian, 74 Misc 2d 120) and proper under these circumstances. The request is reasonable. 1
Defendants’ final contention is that such an order would constitute an unlawful "body search” prohibited by the Fourth and Fifth Amendments of the Constitution.
As regards the Fourth Amendment, it has been held that fingerprinting "involves none of the probing into an individual’s private life and thoughts that marks an interrogation or search.” (Davis v Mississippi, 394 US 721, 727.) A series of Supreme Court cases has indicated that identifying physical characteristics may be obtained when neither unlawful detention nor unlawful intrusion into one’s body is employed to secure disclosure. (See United States v Dionisio, 410 US 1; Schmerber v California, 384 US 757.) So, there is no violation of the Fourth Amendment in this case.
Nor is the Fifth Amendment violated by such an exhibition of physical characteristics. As was pointed out in Schmerber v California (supra, p 764) "both federal and state courts have usually held * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged * * * is that the privilege is a bar against compelling 'communications’ or 'testimony,’ but that compulsion which makes a suspect or accused the source of 'real or physical evidence’ does not violate it.”
Evaluating all of the factors in the case, this court finds that the People have established jurisdiction and that their request is both reasonable and constitutionally, permissible; *925 hence, their motion to permit palm printing is granted as to both defendants.