E. Leo Milonas, J.
The defendant was indicted on February 24, 1977 for the crimes of criminal sale of a controlled substance in the second degree and criminal possession of a controlled substance in the third and fifth degrees, in violation of sections 220.41, 220.16 and 220.09 of the Penal Law. She now moves to suppress an in-court identification based upon photographs which she asserts were improperly taken and, in the alternative, for a Wade hearing to determine the suggestiveness of the preindictment identification.
According to the defendant, several weeks prior to her arrest on February 9, 1977, certain individuals who informed her that they Were police officers visited her apartment, purportedly to inquire about an automobile belonging to her. Without notifying the defendant that she was a suspect in a criminal action, they asked her some questions and then requested that she accompany them outside. She obliged, but upon leaving the vestibule of her apartment, she was photographed without permission. The issue thus is whether a subsequent police identification made from snapshots taken at that time must be suppressed as arising from an unlawful search and seizure.
The United States Supreme Court has frequently stated that the purpose of the Fourth Amendment is to protect people from unwarranted and arbitrary intrusions into their privacy. (See United States v Ortiz, 422 US 891; Cardwell v Lewis, 417 US 583; United States v Dionisio, 410 US 1; Katz v United States, 389 US 347; Warden v Hayden, 387 US 294; Schmerber v California, 384 US 757; Jones v United States, 357 US 493.) In Katz v United States (supra) the court declared that a person’s right to be free from unreasonable searches and seizures depends upon an individual’s reasonable expectation of privacy. (See, also, Mancusi v De Forte, 393 US 364.) Thus, what someone "knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection,” although what "he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.” (Katz v United States, supra, pp 351-352; see, also, United States v Bronstein, 521 F2d 459; *664 United States v Novello, 519 F2d 1078.) This is, in effect, a reiteration of the "plain view doctrine” which holds that there can be no reasonable expectation of privacy as to those things which are fully disclosed and widely available to the general public. (See Harris v United States, 390 US 234.)
In the present situation, the photographs were taken of the defendant’s face, a part of the body which is regularly available to public viewing. There is certainly nothing unlawful about a person, even one who is a police officer, simply snapping pictures of someone else. What is prohibited is the use of those photographs without permission for certain purposes, such as advertising and commerce, since there is a statutory right to privacy. (See Civil Rights Law, § 50.) This court disagrees with the opinion in People v Johnson (88 Misc 2d 749) insofar as it holds as a general proposition that under CPL article 160, photographs of a defendant may be taken only pursuant to a valid arrest and not for investigation. CPL 160.10 (subd 3) merely provides that whenever fingerprints are mandated or permitted under subdivisions 1 or 2, then photographs and palm prints of the defendant may also be taken. Nothing in CPL article 160 precludes the taking of photographs in any and all other instances.
Moreover, the intrusion upon the individual when his picture is being taken is minimal as compared to that which occurs when he is required to display measurable or indentifiable physical characteristics by having to participate in a lineup or furnish blood specimens, handwriting exemplars, voice samples, palm prints, dental impressions and the like. (See Kirby v Illinois, 406 US 682; United States v Wade, 388 US 218; Schmerber v California, 384 US 757, supra; Gilbert v California, 388 US 263; United States v Dionisio, 410 US 1, supra; People v Mineo, 85 Misc 2d 919; People v Allah, 84 Misc 2d 500.) Courts, however, seem to be divided on the issue of whether, absent a valid arrest, even judicially sanctioned detention is permissible for an investigatory purpose. In Matter of Alphonso C. (50 AD2d 97) the First Department declared that the court below lacked authority to order a possible suspect to appear in a lineup prior to the filing of an accusatory instrument. See, also, People v Vega (51 AD2d 33) which held that a person not yet charged with the particular crimes in question could not be forced to remove his beard and thereafter placed in a lineup. In Matter of District Attorney of *665 Kings County v Angelo G. (48 AD2d 576) on the other hand, the Second Department affirmed an order requiring certain nonarrested persons to supply handwriting samples, and in United States v Dionisio (supra) the United States Supreme Court allowed the compulsion of voice exemplars in connection with Grand Jury proceedings.
Clearly, if photographs are procured either in the course of an unauthorized detention or pursuant to an unlawful entry or trespass, they would be "tainted” by the prior illegality. See People v Johnson (supra) and also Dietemann v Time, Inc. (284 F Supp. 925) in which the court stated that the conduct of magazine reporters, who were acting under an arrangement with police officers, thereby obtaining entrance by subterfuge to the plaintiffs house where they surreptitiously snapped pictures and made recordings, was an unlawful search. In the instant case, the police misrepresented to the defendant the object of their visit, thus inducing her to leave her apartment so that they could take her photograph. The issue then is whether the officers’ use of deception to achieve their purpose is sufficient to mandate suppression of the defendant’s identification.
It is undisputed that consent to a search cannot be predicated upon submission to authority. (Bumper v North Carolina, 391 US 543; People v Gonzalez, 39 NY2d 122; People v Cioffi, 55 AD2d 682; People v Gorsline, 47 AD2d 273.) Similarly, police reliance upon a ruse to effectuate a warrantless entry into an individual’s home is improper. (People v Torres, 45 AD2d 185; People v Jefferson, 43 AD2d 112.) Therefore, it is evident that had the officers herein gained admission to the defendant’s apartment through the same device, any evidence derived from photographs which they might have taken inside the premises would have been excludable at trial. Instead, the police officers tricked her into coming out, conduct which this court does not perceive to be distinguishable in any significant sense. In fact, the police could easily have waited for her to emerge on her own and then have snapped her picture.
Consequently, the defendant’s motion to suppress an in-court identification arising from the photographs of her is granted. The People may, of course, demonstrate an independent basis for their witness’ identification.