OPINION OF THE COURT
Lyman H. Smith, J.
The Special Prosecutor of and for the County of Onondaga makes application to this Extraordinary Special and Trial Term of Supreme Court[1] for an order requiring G. W. Anonymous, a former Onondaga County public official (and, prior to that, an assistant public official), to provide the Special Prosecutor’s office with personal handwriting exemplars. According to the Special Prosecutor’s moving papers, evidence has been presented to the Extraordinary Grand Jury of Onondaga County, suggesting respondent’s participation in a conspiracy to benefit the Onondaga County Republican Committee by illegal solicitation of political contributions from Onondaga County employees, in particular, members of the respondent’s department. The activities under investigation would purportedly violate, inter alia, subdivision 3 of section 107 of the Civil Service Law and section 484 of the Election Law.[2]
The evidence submitted upon this application includes photostatic copies of certain handwritten checks drawn to the order of the Onondaga County Republic Committee (carrying the date, payee, and purported signature of respondent) and also includes purportedly related handwritten documents listing the names of employees within respondent’s county department together with certain tickets sold to and sums solicited from the individuals named in such lists. A handwriting analyst on the Special Prosecutor’s staff has sworn, by affidavit, that, in his opinion, the same person produced the handwriting in those various documents. Another affiant, familiar with respondent’s handwriting, has examined one of the documents and has stated under oath, that the handwrit *300 ing appears to be that of respondent. In addition to the documentary evidence suggesting respondent’s involvement in the alleged conspiracy, the Special Grand Jury has heard other evidence from an employee of the respondent’s department, to the effect that respondent did, in fact, participate in the solicitation of political contributions from members of the respondent’s staff.
Respondent has yet to be charged with any offense. It is the contention of the Special Prosecutor that respondent’s exemplars are necessary to complete the Grand Jury’s investigation. Respondent and his attorney have been made aware of the ongoing investigation. He has declined an opportunity to voluntarily furnish the requested exemplars.
The respondent’s objection to this special application questions the court’s authority to issue such an order when, in fact and in law, the Special Prosecutor has statutory power to subpoena respondent’s appearance before the Grand Jury (CPL 610.20, subd 2) for the purpose of obtaining the requested exemplars. He urges that the production of handwriting exemplars falls wholly within the purview of CPL 50.10 (subd 3) and that, accordingly, the Special Prosecutor is limited to the statutorial device of the Grand Jury, subpoena as set forth in CPL 610.20 (subd 2).
Obviously, the respondent seeks to avail himself of the protective transactional immunity[3] extended to "[A] witness who gives evidence in a grand jury proceeding”. (CPL 190.40, subd 2.)
• The challenge to the application at bar raises the question of whether or not the prosecutor, by seeking a court order for production of evidence outside the process of a Grand Jury subpoena, may properly avoid the resultant cloak of immunity that falls upon a subpoenaed Grand Jury witness by virtue of CPL 190.40 (subd 2).
This challenge is, however, of abstract dimension. It finds neither conceptual, nor historical, foundation in the transactional immunity provisions of CPL 190.40.
A literal reading of CPL 190.40 and 50.10 may suggest to *301 some that anyone "who gives evidence” to a Grand Jury, regardless of type of evidence, i.e., testimonial or physical, and regardless of the import of such evidence on the question of the witness’ guilt or innocence, will automatically trigger transactional immunity. The suggestion is illogical. (See, e.g., People v McFarlan, 42 NY2d 896, revg 52 AD2d 112, on opn below 89 Misc 2d 905, 909.) Neither public policy, nor logic, support such conclusion.
The logic of the statutorial immunity provisions is that the prospective Grand Jury witness exchanges his otherwise privileged evidence for immunity from prosecution. Or, to put it another way, the Legislature exchanges its grant of immunity only for evidence that the witness is privileged to withhold. This principle is reflected in the statutes (CPL 190.40, 50.10) and is firmly embedded in our law. (See People v Steuding, 6 NY2d 214, 216-217; People v Laino, 10 NY2d 161, 171-173; Matter of Gold v Menna, 25 NY2d 475, 481; Matter of Anonymous Attorneys, 41 NY2d 506, 507, 508-510; see, also, Immunity Statutes and the Constitution, 68 Col L Rev 959.) To put it simply, our immunity statutes were never intended to give a gift of immunity for nonprivileged evidence. (See, e.g., Shapiro v United States, 335 US 1, 16.) If the evidence sought by the People be not privileged, then the right to invoke the protective statutory immunity (of CPL 190.40, subd 2) disappears. (See, e.g., People v De Feo, 308 NY 595; Matter of Gold v Menna, supra; People v Pardo, 92 Misc 2d 985.)
Query then: Do our constitutional inhibitions against self incrimination (i.e., US Const, 5th Arndt; and NY Const, art I, §6) protect one against court-ordered compulsion to submit handwriting samples?
The answer is "no”.
Schmerber v California (384 US 757, 764) teaches that, "[B]oth federal and state courts have usually held that [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk or to make a particular gesture.” In simplest terms, the "Fifth Amendment privilege” is confined to "communications” or "testimony” and the privilege is not applicable to a compelled display of physical characteristics.
The landmark trilogy of Wade-Gilbert-Stovall (United States v Wade, 388 US 218; Gilbert v California, 388 US 263; Stoval v Denno, 388 US 293), decided in the following year flowed *302 naturally from Schmerber. While fixing the scope, dimension and limits of constitutionally permissable procedures surrounding identification of those suspected of criminal conduct, these decisions left undisturbed the principle that properly compelled display of identifiable physical characteristics infringes upon no interest protected by the privilege against compulsory self incrimination. Thus, the Gilbert court, with specific reference to handwriting samples, unequivocally stated, "The taking of the exemplars did not violate petitioner’s Fifth Amendment privilege against self-incrimination. * * * A mere handwriting exemplar, in contrast to the content of what is written, like the voice or the body itself, is an identifying physical characteristic outside [the Fifth Amendment’s] protection.” (Gilbert v California, 388 US 263, 266-267, supra.)
Reaffirmation of the principle, that compelled display of personal physical characteristics (including both handwriting and voice exemplars) will not infringe on Fifth Amendment privileges, may be found in United States v Dionisio (410 US 1).
Similarly, our State courts have consistently supported the proposition that a person may be ordered to display nontestimonial physical characteristics, including handwriting, without infringement of Fifth Amendment privileges. (See People v Goldberg, 19 NY2d 460, 465-466; People v Craft, 28 NY2d 274, 276-277; Matter of Erlbaum v Gold, 49 AD2d 594; People v Rogers, 86 Misc 2d 868; People v Sanders, 58 AD2d 525; People v Evans, 90 Misc 2d 195; People v Schwartz, NYLJ, April 14, 1976, p 9, col 1; People v Sims, NYLJ, April 27, 1976, p 6, col 4.)
By his present application (for court-ordered appearance and submission of handwriting samples) the Special Prosecutor has not stripped the respondent of any constitutional privilege against self-incrimination, nor of any protective immunity which might otherwise be available to him.[4]
Having disposed of the contention that the request at Bar could result, in effect, in any impermissible deprivation of respondent’s inchoate right to transactional immunity, we next consider whether the requested court-ordered appearance and directive to provide handwriting exemplars may consti *303 tute an unreasonable "seizure” within the meaning of the Fourth Amendment of the United States Constitution and section 12 of article I of the New York State Constitution.
Again, both Federal and State decisions dictate that this inquiry must be answered in the negative. (See, e.g., Matter of District Attorney of Kings County v Angelo G. [Anonymous], 48 AD2d 576, 579; Matter of Erlbaum v Gold, 49 AD2d 594, supra; People v Mineo, 85 Misc 2d 919; Matter of Burke v Sullivan, 52 AD2d 536; United States v Mara, 410 US 19; United States v Dionisio, 410 US 1, supra; Davis v Mississippi, 394 US 721; Schmerber v California, 385 U. S. 757, supra; and United States v Doe, 457 F2d 895, 989-899.) As Chief Judge Friendly succinctly stated in Doe (p 899) "[N]o intrusion into an individual’s privacy results from compelled execution of handwriting or voice exemplars”.
Finally, and fundamental to our inquiry, two questions must be answered:
(1) Does the court have authority to grant the requested order?
(2) If so, upon what grounds?
With reference to the first question, our courts have shown little reluctance in providing relief similar in scope to that requested at bar. As cogently observed by Bernard Dubin, J., in People v Mineo (85 Misc 2d 919, 921-922, supra), "A review of the law in connection with the first question[5] shows that our courts have entertained investigatory applications over a wide range of criminal subjects. They have considered motions for lineups (People v Vega, 82 Misc 2d 718; People v Falco, 67 Misc 2d 520); for blood tests (People v Longo, 74 Misc 2d 905), for surgical operations to recover bullets (People v Smith, 80 Misc 2d 210), and even applications to remove facial hair (Matter of Mackell v Palermo, 59 Misc 2d 750). In virtually all of these cases the court felt it possessed the authority to grant the relief requested.” Some have apparently found inherent common-law powers to issue such administrative orders (People v Mineo, supra). Others have relied on subdivision 3 of section 2-b of the Judiciary Law[6] and the court’s fundamental jurisdictional powers (Matter of District Attorney of Kings *304 County v Angelo G. [Anonymous], 48 AD2d 576, revd on other grounds 38 NY2d 923, supra; Matter of Erlbaum v Gold, 49 AD2d 594, supra) to sustain issuance of the nisi prius orders.
For example, in Angelo G. (48 AD2d 576, 580, supra), Hopkins, J., writing for the majority in affirmance of a prearrest, preindictment order (to compel submission of a suspect’s handwriting exemplars) said, "We see no violation of due process under the proceedings initiated by the District Attorney. The appellants were served with the notice of the application and with the supporting papers. They were given the opportunity to oppose the application and to submit any grounds of opposition to the court. The court determined the merits of the application after hearing the appellants. Although the procedure is novel, since it contemplates disclosure prior to a grand jury investigation and constitutes, in a limited sense, prearrest detention (cf. Terry v Ohio, 392 US 1; Davis v Mississippi, 394 US 721, supra), we think it is less stringent and intrusive into the privacy of an individual than a search warrant, for which an application may be made without notice to the person to be searched (CPL 690.35, 690.40, 690.45).” (Emphasis supplied.)
By a parity of reasoning, this court is satisfied that, absent specific constitutional[7] or statutorial restrictions, and it finds, none, the court’s inherent jurisdictional power, both at common law and in accordance with subdivision 3 of section 2-b of the Judiciary Law, will warrant, when firmly based on probable cause, the requested relief in the instant case. (See Matter of District Attorney of Kings County v Angelo G. [Anonymous], 48 AD2d 576, supra; see, also, People v Mineo, 85 Misc 2d 919, supra, and People v Omard, 86 Misc 2d 151.)
Thus, while the prospective order (to submit handwriting exemplars) may briefly inconvenience the respondent, such slight detention will be jurisdictionally permissible. However, to exercise such power, the court must be satisfied by credible proof, upon notice, that a prima facie connection exists between the matter under investigation and the questionable or unknown handwritten document. That is to say, the court must find, before ordering submission of exemplars, probable cause to believe that the handwritten documents under inves *305 tigation were (or, for that matter, were not) at some time within the control of the detained subject person under such circumstances that equity and fairness dictate, in the interest of justice and fairness to all concerned, that handwriting exemplars be submitted in order to determine, if possible, the authorship of the questioned documents.
The foregoing foreshadows the response to the above-stated second and final question.
A court-ordered handwriting exemplar will be authorized (1) when, in the interest of justice, or when in the interest of public or private safety, it is necessary to determine authorship, validity, or authenticity of a questioned handwritten instrument or document and (2) when it appears that an identifiable person, or persons, have exercised such control over and have had such access to the questioned instruments that there is probable cause to believe that such person, or persons, wrote or authored the questioned documents.
In each instance the court is required to make a factual determination upon notice to all parties to determine the reasonableness and constitutional validity of the requested submission of an identifiable and known exemplar. (See Matter of District Attorney of Kings County v Angelo G. [Anonymous], 48 AD2d 576, supra; People v Mineo, 85 Misc 2d 919, supra; People v Omard, 85 Misc 2d 151, supra; United States v Dionisio, 410 US 1, supra.)
The application at bar, brought on by an order to show cause with full and adequate notice to all parties for submission of all relevant matters of law and fact, has demonstrated a substantive justification for the requested relief. There is probable cause to believe that the questioned instruments were, if authored by the respondent, evidence that he and others were involved in illicit solicitation of political contributions from public employees. There is additional and independent evidence indicating that the respondent played a key role in soliciting political payments from assistance within his office in Onondaga County.
The identity of the authorship of certain handwritten instruments, documents and lists now before the Special Grand Jury will assist that Grand Jury, and in all probability future petit juries, to determine, not only whether the respondent, but other persons, may be innocent or guilty of criminal conduct.
This court is compelled to conclude, de facto and de jure, *306 that the application at bar is constitutionally permissible, jurisdictionally available, and necessary and reasonable.
Accordingly, the application is granted, the Special Prosecutor, the respondent’s attorney and the respondent are to arrange a suitable time and place for the production of respondent’s handwriting exemplars.

. The Governor’s Executive Order No. 42 (9 NYCRR 3.42), dated November 24, 1976, established the office of the Special Prosecutor for Onondaga County, and gave to it the responsibility of investigating alleged political corruption in Onondaga County. Executive Order No. 43 (9 NYCRR 3.43), also dated November 24, 1976, concurrently created an Extraordinary and Special Trial Term of Supreme Court to hear and try all matters arising from such investigations, and further, authorized the impaneling of Extraordinary Grand Juries.

. The Extraordinary Special Grand Jury has heretofore filed indictments charging various public officials of Onondaga County with alleged violations of the Penal Law, Civil Service Law and Election Law, purportedly arising from an interrelated conspiracy to illicitly raise political funds.

. CPL 50.10 (subd 1) described "immunity” by stating: "A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty of forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses ’immunity’ from any conviction, penalty or forfeiture.” Such protection is commonly referred to as "transactional immunity”.

. CPL 190.45 (subd 1) supports the conclusion that the immunity provisions of CPL 190.40 relate directly to, and stem from the privilege against self incrimination.

. Identical to "first question” set forth above.

. Subdivision 3 of section 2-b of the Judiciary Law provides: "A court of record has power to devise and make new process in forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it.”

. Invocation of Sixth Amendment of the United States Constitution rights to counsel was rejected in Gilbert v California (388 US 263). "The taking of the exemplars was not a ’critical’ stage of the criminal proceedings entitling petitioner to the assistance of counsel.” (Gilbert, supra, p 267.)