*768 OPINION OF THE COURT
Nat H. Hentel, J.
In this case of apparent ñrst impression, defendant moves to dismiss the indictment upon the ground that it charges felonies and misdemeanors for which he had received immunity from prosecution. Under compulsion of Grand Jury subpoena, defendant submitted handwriting exemplars which physical evidence was subsequently used by the People to obtain the indictment.
The People argue that handwriting exemplars have been classified as "demonstrative evidence” and, as such, are excluded from the self incrimination protection of the Fifth Amendment. See and compare People v Young (NYLJ, May 19, 1978, p 13, col 2) which held: "the ordering of the voice exemplar would not violate the defendant’s fifth amendment privilege against self-incrimination. The fifth amendment applies to testimonial communication but not to the display of physical characteristics. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications’ or 'testimony,’ but that compulsion which makes a suspect or accused the source of 'real or physical evidence’ does not violate it. (Schmerber v California, 384 U.S. 757, 764, 1966).” See, also, Gilbert v California (388 US 263) which extends the Schmerber v California (384 US 757) holding to include handwriting exemplars.
The District Attorney further asserts that the relevant statutes (CPL 50.10, 190.40 and 190.45) should be interpreted to include the principle set forth in the Schmerber (supra) holding.
Defense counsel contends that New York, in contrast to Federal law, provides for "automatic transactional immunity” for all Grand Jury witnesses with respect to their testimony, or such physical evidence as they may provide, with the exception of enumerated statutory exclusions (see CPL 190.40, subd 2).
THE FACTS
Defendant, a local businessman, was indicted on February 27, 1978, and charged with attempted grand larceny in the second degree (Penal Law, §§ 110.00, 155.35); offering a false instrument for filing in the first degree (Penal Law, § 175.35); *769 and making a punishable false written instrument (Penal Law, § 210.45). The People allege that defendant filed fraudulent claims in his application to the Emergency Aid Fund as a result of allegedly being victimized by looting which occurred in New York City during the July, 1977 so-called "blackout”. On October 25, 1977, defendant, accompanied by counsel, appeared at the District Attorney’s office pursuant to telephone request. Defendant was informed that he was the target of an investigation regarding his emergency damage claims, although no formal charges had as yet been made. On advice of counsel, defendant made no statement other than to agree to furnish requested exculpatory evidence. By letter dated November 9, 1977, addressed to the District Attorney, defendant’s counsel indicated that he was in possession of certain exculpatory evidence, and also that his client desired to testify voluntarily before a Grand Jury.
The District Attorney thereafter requested defendant to provide a handwriting exemplar. Defendant declined to comply with this request and a motion to compel defendant to comply was thereafter made. On January 25, 1978, Mr. Justice Lentol of this court denied the motion without prejudice on the grounds that the People had failed to show a crime had been committed, or that probable cause existed to believe defendant had committed a crime. Defendant was then subpoenaed to appear before a Grand Jury. In response, defense counsel by letter dated February 2, 1978, notified the District Attorney that his client had withdrawn his offer to appear voluntarily, and would henceforth testify only under subpoena compulsion.
On February 14, 1978, defendant appeared with counsel outside the Grand Jury room where he was informed by an Assistant District Attorney that he would not receive immunity for the requested handwriting exemplars. Defense counsel insisted that his client was nevertheless entitled to full immunity for all compelled evidence. Defendant was then brought into the Grand Jury room, handed 20 white index cards, and instructed by the Assistant District Attorney to sign each of them. Once having complied, defendant was dismissed. No oral testimony or other physical evidence was sought by the People, nor was any given by defendant, and the index cards bearing his signatures were subsequently marked into evidence before the Grand Jury. Shortly thereafter, defendant was indicted.
*770 CONCLUSIONS OF LAW
Motivated by a desire to achieve a difficult and delicate balance between the People’s right to investigate criminal activity and the sanctity of the individual’s rights as mandated by the Fourth and Fifth Amendments to the United States Constitution, the law has generated a multitude of varying Grand Jury immunity laws. While moral and philosophical perspectives always make for interesting reading, this court will resist the impulse to expound on such considerations, and confine itself to the required analysis of the relevant issues.
In support of the proposition that defendant’s Fourth and Fifth Amendment rights have not been violated, the People cite, in part, the United States Constitution, various holdings of the Supreme Court interpreting the Constitution, and selected Federal statutes (Schmerber v California, 384 US 757, supra; United States v Dionisio, 410 US 1; United States v Mara, 410 US 19; Gilbert v California, 388 US 263, supra; United States v Doe, 457 F2d 895, cert den 419 US 848; Davis v Mississippi, 394 US 721). The People are not being challenged on this issue, however, by the defense or the court.
It is well settled that a handwriting exemplar is not constitutionally protected evidence in the Federal courts (Gilbert v California, supra). Furthermore, it has been established that a Federal Grand Jury, in the exercise of its investigative function, may compel a witness to provide such an exemplar, and then proceed to indict on the basis of this compelled evidence without constituting a deprivation of a Fourth Amendment right (United States v Dionisio, supra; United States v Mara, supra).
The States, via their Constitutions and legislative enactments, while adhering to basic Federal requirements, remain free to expand Federally guaranteed rights (Counselman v Hitchcock, 142 US 547, 560; Murphy v Waterfront Comm., 378 US 52). Thus, New York has enacted "transactional immunity” which does enlarge Federally guaranteed individual rights (NY Const, art I, § 6, US Const, 5th Arndt; CPL 50.10, 190.40, 190.45; Gold v Menna, 25 NY2d 475). This court, therefore, will address itslef to two issues: (1) the scope of New York’s "transactional immunity”; and (2) whether the District Attorney’s Grand Jury action triggered "automatic immunity” for defendant.
*771 "Immunity is a statutory creation. What the Fifth Amendment grants is not immunity but a constitutional 'privilege’ against self incrimination” (Matter of Koota v Bonanno, 52 Misc 2d 748, 754). No individual possesses the power to bestow upon, limit, or withhold immunity from any witness, unless there is a valid waiver of immunity as defined in CPL 190.45; or there exists a specified statutory exclusion. A District Attorney’s stated intention not to grant immunity is incompetent to effect this result.
The entire body of New York’s Grand Jury immunity statutes is contained within CPL articles 50 and 190. Before undertaking an analysis of these statutes, it is essential to acquire some understanding of the factors which led to their recent enactment. Justice Richard G. Denzer, in his Practice Commentaries, describes the experiences which produced these statutes (McKinney’s Cons Laws of NY, Book 11 A, CPL 190.40, pp 122-128). Prior to 1953, New York, under numerous immunity statutes conferred "automatic immunity” upon all Grand Jury witnesses in particular kinds of criminal investigations (People v Sharp, 107 NY 427). This system resulted in certain abuses, the most important of which was the ability of "sophisticated” witnesses to acquire an "immunity bath” by "blurting out” nonrequested testimonial information. Also, it was felt that the designation of certain crimes while excluding other equally serious crimes, was arbitrary, capricious, and served no valid purpose. The Legislature enacted section 2447 of the Penal Law (later substituted for section 619-c of the Code of Criminal Procedure), which required the assertion of privilege as a condition precedent to acquiring immunity. Unfortunately, this enactment, while eliminating certain earlier abuses, resulted in numerous constitutional problems, particularly in those cases where the witness was a "target” or a "tainted” witness (People v Steuding, 6 NY2d 214; People v Laino, 10 NY2d 161; People v De Feo, 308 NY 595; People v Yonkers Constr. Co., 17 NY2d 322).
The Legislature synthesized these various elements, and enacted the present law. In brief, our present statutes provide "automatic immunity” for all compelled testimony regardless of the status of Grand Jury witnesses who testify in all types of criminal investigations (People v Zelmanowicz, 93 Misc 2d 491). By so doing, the Legislature equalized the treatment between "target” witnesses and others, and also removed the old distinctions between different crimes. Now a witness may *772 voluntarily waive immunity but only under very stringent statutory conditions (see CPL 190.40 and 190.45).
CPL 50.10 reads as follows:
"Compulsion of evidence by offer of immunity; definition of terms.
"The following definitions are applicable to this article: "1. 'Immunity.’ A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses 'immunity’ from any such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein.
"2. 'Legal proceeding’ means a proceeding in or before any court or grand jury, or before any body, agency or person authorized by law to conduct the same and to administer the oath or cause it to be administered.
"3. 'Give evidence’ means to testify or produce physical evidence.”
The People urge this court to interpret subdivision 3 as if it were worded in the following fashion: " 'Give evidence’ means to testify or produce physical evidence exclusive of evidence for which there is no constitutional protection(Emphasis supplied.)
This court will refrain from engaging in such radical redrafting of this statute because it is a general rule that: "the judicial function is to interpret, declare, and enforce the law, not to make it, and it is not for the courts to correct supposed error, omissions or defects in legislation. A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all of the problems and complications which might arise in the course of its administration; and no matter what disastrous consequences may result from following the expressed intent of the Legislature, the Judiciary cannot avoid its duty.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 73, pp 147-148.)
On the other hand, if a given statute suffers from ambigú *773 ous wording (McKinney’s Cons Laws of NY, Book 1, Statutes, § 94), or if by following the literal wording the result would be an absurd one, or one diametrically opposed to the intent of the framers of the law (McKinney’s Cons Laws of NY, Book 1, Statutes, § 111), then it clearly becomes the duty of the court to provide an harmonious and logical construction.
On its face CPL 50.10 contains clear and unequivocal language without reference to constitutionally protected evidence. While the District Attorney resolutely argues that this statute is in disharmony with Federal case law, and far in excess of what the United States Constitution provides, it appears to be totally consistent with section 6 of article I of the New York Constitution, as interpreted by People v Mandel (90 Misc 170, 174), where the court held that this provision "protects a person from any disclosure sought by legal process against him as a witness” (emphasis supplied).
The remainder of this court’s analysis involves CPL 190.40, which provides further elaboration of the rights and liabilities conferred upon all Grand Jury witnesses, and which reads as follows:
"Grand jury; witnesses, compulsion of evidence and immunity.
"1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.
"2. A witness who gives evidence in a grand jury proceeding receives immunity unless:
"(a) He has effectively waived such immunity pursuant to section 190.45; or
"(b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive.
"(c) The evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise, as defined in subdivision one of section 175.00 of the penal law, the production of which is required by a subpoena duces tecum, and the witness does not possess a privilege against self-incrimination with respect to the production of such evidence. Any further evidence given by the witness entitles the witness to immunity except as provided in subdivisions (a) and (b) of this section. ” (Emphasis supplied.)
It is to be noted that defendant in this case was not *774 required to furnish a handwriting exemplar under a subpoena duces tecum with respect to his business enterprises, but rather was brought before the Grand Jury under a subpoena ad testificandum contrary to CPL 190.40 (subd 2, par [c]). Thus the District Attorney did not follow statutory requirements in securing these handwriting exemplars. After all, if the exemplars were so necessary to the People’s case, the District Attorney could have obtained the books and records of defendant’s business enterprises including its canceled checks and other signed documents via a subpoena duces tecum. The narrow limitations of CPL 190.40 are balanced by the remedy provided.
CPL 190.40 (subd 1) and Justice Denzer in his Practice Commentaries (McKinney’s Cons Laws of NY, Book 11 A, CPL 190.40) both make it crystal clear that a Grand Jury witness is under strict compulsion to provide "any evidence legally requested of him” (emphasis supplied) or face contempt of court charges (see, also, Matter of O’Neil v Kassler, 53 AD2d 310; Matter of Koota v Colombo, 50 Misc 2d 583).
Professor Joseph W. Bellacosa, in his Supplementary Practice Commentary (McKinney’s Cons Laws of NY, Book 11 A, CPL 190.40, Pocket Part) with respect to this amendment advises:
"As a practical observation, any grand jury and prosecutor utilizing and relying on this section will have to be quite precise and careful not to stray into areas other than the narrow production and identification of the statutorily enumerated books, papers, records or other physical evidence of an enterprise * * * The peril and price for loose questioning and for attempted abuse of the narrowly drawn exception will be automatic immunity for the witness * * *
"The enactment and utilization of this exception should be watched carefully in the event it represents a harbinger of an attempt in New York State to cut back its more generous transactional immunity to the constitutionally permissible use immunity declaration of Kastigar v. United States, 406 U. S. 441”. (Emphasis supplied.)
Under CPL 190.40 (subd 2, pars [a], [b], [c]), I find that the three stated exclusions do not apply to this case.
It is of significant interest to this court to note that the Assistant District Attorney in questioning defendant before the Grand Jury, and prior to extracting the handwriting *775 exemplars from him, stated on the record of the Grand Jury proceeding:
"Q. Normally, a witness who gives evidence and by that I mean oral testimony, to us, or spoken testimony or who is required to produce physical evidence or documents before the Grand Jury, receives what is known as immunity. A witness receives immunity unless he has effectively waived his right to the immunity pursuant to statute and we will not ask you to do that. Have we, Mr. Perri?
"A. No, you haven’t.” (Emphasis supplied.)
Mr. Justice Martuscello, in his dissent in Matter of District Attorney of Kings County v Angelo G. (48 AD2d 576, 582) notably said: "Had these individuals been subpoenaed to appear before the Grand Jury for the purpose of supplying exemplars, it is clear that they would have received immunity from prosecution (CPL 190.40; CPL 50.10, subd 3). I do not believe that the District Attorney should be permitted to evade this clear statutory mandate.”
For a dramatic example of the degree of strict compliance accorded to the immunity statutes of this State, see People v Gerald (91 Misc 2d 509). Here the witness (the target of the investigation) agreed to waive her immunity and did in fact sign a waiver. However, the relevant statute (CPL 190.45, subds 1 and 2) states that in addition to requiring a subscription, "waiver of immunity is not effective unless and until it is sworn to before the grand jury”. The District Attorney in that case failed to have the witness so sworn. This oversight resulted in the granting of defendant’s motion to dismiss the indictment because the prosecution had triggered "automatic transactional immunity.” The People were also denied their cross motion to submit the case to another Grand Jury.
To summarize: CPL 190.40, like CPL 50.10, is clearly worded, mandatory in nature (thereby requiring strict construction), and consistent with prior case law (People v Laino, 10 NY2d 161, supra; People v Steuding, 6 NY2d 214, supra), the New York Constitution, and stated legislative intent. Furthermore, CPL 190.40 (subd 2, par [c]) illustrates the precise manner in which the Legislature provided a narrowly defined investigatory device for the Grand Jury.
In the opinion of this court, the District Attorney has misapplied the Schmerber decision (384 US 757, supra); attempted to conform the New York statutes with the more *776 restrictive provisions for Federal use immunity; and, thereby triggered "automatic immunity” for this defendant.
As part of his argument, the District Attorney points out that there is no New York case law which indicates that a Grand Jury witness may withhold "demonstrative evidence”. It may be that the answer lies in the fact that no District Attorney before has ever attempted to perform the cavalier feat of compelling a target witness to furnish handwriting exemplars before a Grand Jury.
The Supreme Court cases which closely parallel the instant case are United States v Dionisio (410 US 1, supra) and United States v Mara (410 US 19, supra), in which the dissenting Justices argued that a "target” witness who is compelled to produce even demonstrative evidence is denied his Fourth Amendment right of freedom from unlawful search and seizure, and thereby the sense of traditional fair play is violated.
This court will not address itself to whether the New York Legislature agreed with the dissenting Justices in United States v Dionisio (supra) and United States v Mara (supra). New York is, after all, free to impose higher standards for its Grand Jury procedures under the State Constitution than the Supreme Court may require under the United States Constitution. Neither this court nor the District Attorney possesses the power to decide whether New York is granting too much or too little. The unambiguous statute (CPL 190.40) speaks for itself. Once defendant furnished his handwriting to the Grand Jury, he gave evidence and received immunity from prosecution thereafter.
Motion granted. Indictment dismissed with prejudice.