THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH PERRI, Respondent.

Second Department, January 14, 1980

### APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (Lionel René Saporta* of counsel), for appellant.

*Rhodes & Fisher (Barry Gene Rhodes* of counsel), for respondent.

## OPINION OF THE COURT

MARGETT, J.

In a case of novel impression, the question is whether Criminal Term erred in finding that the involuntary production by the defendant of handwriting exemplars, before the Grand Jury pursuant to a subpoena *ad testificandum,* was sufficient to inadvertently confer immunity pursuant to CPL 190.40.

The genesis of this appeal lies in the power blackout of July, 1977, and the consequent looting of numerous Brooklyn businesses. Because of the financial devastation suffered by some merchants, the Economic Development Administration of the City of New York made funds available to those businesses which had been ransacked. Some of the claims for assistance proved to be fraudulent, and in the autumn of 1977, the District Attorney's office commenced the investigation of various suspicious claims. Among those under investigation were claims made by the defendant-respondent Joseph Perri.

On October 20, 1977 defendant was telephoned and asked to appear for questioning at the office of the District Attorney, Kings County. Defendant complied and, after being informed of his constitutional rights, he was told that he was the target of an investigation into fraudulent applications for emergency aid allegedly made with respect to three Brooklyn laundromats. On the advice of his counsel, who was present, he refused to make a statement.

At this time defense counsel was informed that the investigation had reached a stage where submission to the Grand Jury would be appropriate unless the information already gathered was contradicted by some new evidence. The defense offered to present exculpatory evidence and requested an opportunity to appear before the Grand Jury.

At a January 4, 1978 meeting between defense counsel and a representative of the District Attorney's office, the defense proffered nine addresses of witnesses who would offer evidence of an "exculpatory" nature. The People attempted to contact and interview the witnesses in question. Of these, at least two were unavailable, and at least one appeared to be actively avoiding the District Attorney's detective. Four were interviewed and stated that they saw nothing on the night of the blackout and that they were not aware of any damage sustained by respondent's property.

Only one, an employee of a lumber yard situated near one of respondent's properties, gave exculpatory testimony to the effect that an employee of the defendant purchased plywood to board up a window which was not broken prior to the blackout. That witness' testimony was, immediately upon its discovery, submitted to the Grand Jury, which was instructed that the testimony was exculpatory in nature and in possible contradiction of the testimony of other witnesses.

At the January 4, 1978 meeting, the prosecution also requested that Perri voluntarily provide a handwriting exemplar. Defendant refused "to cooperate further." In response, the District Attorney moved, by order to show cause returnable January 17, 1978, to require defendant to provide exemplars of his handwriting.

In the District Attorney's supporting affirmation, it was alleged that "[t]he purpose of requiring a handwriting exemplar is to determine whether Joseph Perri did in fact sign an application * * * which requested aid for businesses owned by Joseph Perri". However, in opposition, defense counsel indicated that the prosecutor "was given names of witnesses who could substantiate that the laundromats had been entered and damaged on the night of the blackout" and that the prosecutor had failed to provide probable cause for the handwriting exemplars. By order dated January 25, 1978, Criminal Term denied the District Attorney's application without prejudice to renewal upon a proper showing of, *inter alia,* probable cause to believe a crime was committed by defendant. Instead of resubmitting its motion, the prosecution opted to present its evidence to the Grand Jury. Defendant was offered the opportunity of appearing before the Grand Jury, but he withdrew his previous request in writing. Nevertheless, defendant was served with a subpoena *ad testificandum,* directing him to appear before the Grand Jury.

On February 14, 1978 Perri appeared at the Grand Jury accompanied by counsel. At that time, the District Attorney stated that defendant would only be asked to provide exemplars of his handwriting. Defendant was also informed that he would not receive immunity by virtue of merely supplying such handwriting exemplars.

In the Grand Jury room, the Assistant District Attorney presenting the case again advised defendant that he would not be asked to give testimony, but only to provide "examples of [his] handwriting." Respondent agreed that he had neither

waived immunity nor been asked to do so. He further admitted having discussed the issue of immunity with his attorney. After defendant was informed of the scope of the Grand Jury's inquiry and the transactions it was investigating, he was asked to, and did, write his name on 20 index cards. Defendant was then excused.

At the close of the Grand Jury investigation, Joseph Perri was indicted, by instrument dated February 27, 1978, for: (a) attempted grand larceny in the second degree (three counts); (b) offering a false instrument for filing in the first degree (three counts); and (c) making a punishable false written statement (three counts). He was arraigned on March 1, 1978, the factual accusation being that he had falsely claimed more than $100,000 in looter damage with respect to three different locations.

On April 18, 1978 defendant moved to dismiss the indictment against him on the ground that he had received immunity before the Grand Jury. On August 25, 1978 a decision granting the defense motion was rendered.

Criminal Term construed CPL 50.10 and 190.40 as bestowing immunity upon a Grand Jury witness who furnishes "physical evidence" in the form of a handwriting exemplar. According to Criminal Term, by virtue of "the cavalier feat of compelling a target witness to furnish handwriting exemplars before a Grand Jury", the prosecutor had inadvertently triggered the immunity statute (People v Perri, 95 Misc 2d 767, 776). Criminal Term found its conclusion to be further strengthened by the 1975 amendment to CPL 190.40, whereby a new paragraph (c) of subdivision 2 was added with respect to the production of books, records and documents before the Grand Jury (95 Misc 2d, at p 774). An order dismissing the indictment was entered on October 4, 1978. The People appeal from said order.

We affirm and hold that the motion was properly granted. CPL 50.10 (subd 1) grants immunity with respect to "any transaction, matter or thing concerning which [a person gives] evidence" before a Grand Jury. CPL 50.10 (subd 3) defines "give[s] evidence" as testimony or the production of physical evidence. CPL 190.35 makes the definitions in section 50.10 applicable to section 190.40. CPL 190.40 (subd 2) provides generally (with three exceptions) that "[a] witness who gives evidence in a grand jury proceeding receives immunity". The three exceptions are: (1) where the witness has effectively

waived immunity (CPL 190.40, subd 2, par [a]); (2) where the evidence given is not responsive to any inquiry and is gratuitously volunteered with knowledge that it is not responsive (CPL 190.40, subd 2, par [b]); and (3) where the evidence "consists only of books, papers, records or other physical evidence of an enterprise * * * the production of which is required by a subpoena duces tecum" (CPL 190.40, subd 2, par [c]).

At bar, the furnishing of handwriting exemplars constituted the giving of physical evidence. None of the three exceptions contained in CPL 190.40 (subd 2) apply in this case. There is no merit to the People's contention that the legislative history connected with the enactment of CPL 190.40 (subd 2, par [c]) in 1975 evinces an intent on the Legislature's part to grant immunity only in those cases where the witness possesses a privilege "co-extensive" with the Fifth Amendment. The memorandum of the State Executive Department (NY Legis Ann, 1975, p 2) states the following:

"The bill was introduced at the request of Joseph J. Hynes, Deputy Attorney General for Health and Social Services (Special Prosecutor). In order for the Special Prosecutor to effectively discharge his duties to determine whether the owners and operators of nursing homes and the businesses which supply goods and services to them have illegally profitted at the expense of the elderly people they are supposed to serve or the State of New York, it is essential that the books and records of those entities, which cannot claim a privilege against self-incrimination be examined. The bill would make it perfectly clear that an individual who merely produces such books or records on behalf of a corporation or other independent entity does not thereby receive immunity.

"The provisions of the bill would apply only to the production of books, papers, records or other physical evidence of an 'enterprise'. That term is defined in subdivision two of Section 175.00 of the Penal Law as 'any entity of one or more persons, corporate or otherwise, public or private, engaged in business, commercial, professional, industrial, eleemosynary, social, political or governmental activity.' "

The inferences the People would draw from the memorandum fail in light of the extremely specific factual predicate incorporated into the amendment, viz., that the witness appear pursuant to a subpoena duces tecum for the sole purpose of producing the books and records of *an enterprise*. Indeed, the

language of the amendment cautions that "[a]ny further evidence given by the witness entitles the witness to immunity except as provided in subdivisions (a) and (b) of this section" (CPL 190.40, subd 2, par [c]). Had the Legislature truly intended that immunity be coextensive with a witness' Fifth Amendment privilege, it could have easily insured that objective by merely deleting the words, "or produce physical evidence" from the definition of "give evidence" contained in CPL 50.10 (subd 3).

Insofar as the People suggest that the three exceptions codified in CPL 190.40 are not all-inclusive, their premise runs contrary to both the explicit language of the statute and the historical foundation for its current working. In discussing the background of the present immunity rules, one commentator put it thusly:

"After almost two decades of confusion attending the question of immunity, the CPL appears to offer the machinery for simplified and understandable treatment. Since 1953, when former Penal Law section 2447 was enacted, immunity procedures have become overly complex in grand jury proceedings, especially in the light of interpretative case law. To avoid so-called immunity baths, whereby a witness considered to have automatic immunity could unburden himself of all his criminal activities, whether relevant to the subject under inquiry or not, section 2447 undertook to require that the witness declare his fifth amendment privilege, at which point a decision could be made as to whether the sought-after answer was worth the grant of immunity. Subsequently, because of decisions in such cases as *People v Steuding* [6 NY2d 214] and *People v Laino* [10 NY2d 161], the rule evolved that anyone who might be considered a 'target' of the proceeding should not be called as a witness; if he was called he would·be given automatic immunity for any of his testimony given without claim of privilege. Under these circumstances, he could neither be prosecuted for perjury for false testimony given at that inquiry, nor be found in contempt for failing to answer questions. In this regard, the staff revisers of the CPL stated that 'although the very purpose of immunity statutes is to compel testimony from the tainted or accomplice type of witness who would otherwise be able to avail himself of the self-incrimination privilege, he is the only type whom the statutes cannot reach.'

"CPL section 190.40, applicable only to grand jury proceed-

ings, simplifies the procedure. This section prescribes, in effect, that every witness called must give evidence; automatic immunity will then be granted unless waived by the witness or unless he gratuitously volunteers evidence which is not responsive to the inquiry, with the knowledge that such information is not responsive. The new statute, therefore, removes the confusing 'target' problem and precludes the grant of immunity baths. This automatic and pervasive immunity stops short, however, of protecting the witness from the consequences of any perjury he might commit in giving the testimony." (Barker, Evidentiary Aspects of the New York Criminal Procedure Law, 38 Brooklyn L Rev 327-328; see, also, Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.40, pp 122-126.)

Quite clearly, the rule in this State is one of "automatic immunity", and the only exceptions to that rule are those that have been enacted by the Legislature.

■■ The fact that immunity in the Federal court system is coextensive with the witness' Fifth Amendment privilege (e.g., *Weg v United States,* 450 F2d 340, 341, cert den 406 US 962, reh den 409 US 898) does not change the result. It is hornbook law that the States may afford defendants greater rights than those held to be necessary by the United States Supreme Court under the corresponding Federal constitutional provision (see *Oregon v Hass,* 420 US 714, 719; cf. *Kastigar v United States,* 406 US 441).

■ Furthermore, the People were, or should have been, aware of the fact that the immunity statute could be triggered in this case (see Bellacosa, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.40, 1972-1979 Supplementary Pamphlet, pp 83-84; see, also, *Matter of District Attorney of Kings County v Angelo G.,* 48 AD2d 576, 582, MARTUSCELLO, J., dissenting, app dsmd 38 NY2d 923). The prosecutor could have achieved his desired result in at least two ways other than the flagrant abuse of power which he exhibited here. He could have subpoenaed the books and records of defendant's corporations upon the reasonable expectation that such records would contain examples of defendant's signature. This would have been permissible under CPL 190.40 (subd 2, par [c]). Or the prosecutor could have renewed his motion at Criminal Term for an order compelling defendant to provide a handwriting exemplar (see *Matter of District Attorney of Kings County v Angelo G., supra;* see,

also, *Matter of Special Prosecutor [Onondaga County] v Anonymous,* 95 Misc 2d 298). His failure to explore either method before resort to self-help necessitates an affirmance of Criminal Term's order of dismissal.

HOPKINS, J. P., LAZER and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, entered October 4, 1978, affirmed.