OPINION OF THE COURT
Albert M. Rosenblatt, J.
The prosecution, by application dated June 8, 1981, has moved for an order authorizing the acquisition of photographs and dental impressions of the defendant’s lower teeth and bite.[1]
The defendant has been arrested for murder in the first degree upon an allegation, in a felony complaint dated June 8, 1981, that on May 15, 1981, while serving a life sentence as an inmate at Green Haven Correctional Facility, he intentionally killed Donna Payant, a correction officer.
*119 He resists the motion, claiming that neither this court nor any other court has legal authority to compel the seizure of this evidence before indictment, in that it would be violative of defendant’s constitutional right to privacy, freedom from self incrimination, and would involve a seizure without probable cause.[2]
The court ordered a hearing, the results of which, when taken together with the controlling statutes, decisions, and constitutional provisions, relate to four separate considerations, which the court will discuss.
I — THE CONSTITUTIONALITY OF THE PROCEDURE UNDER FOURTH AND FIFTH AMENDMENT STANDARDS — PROBABLE CAUSE REQUIREMENTS.
II — THE STATUTORY AND COMMON-LAW POWER OF THE COURT TO GRANT THE RELIEF SOUGHT AT THIS STAGE OF THE ACTION.
III — THE STATUS OF ODONTOLOGICAL EVIDENCE IN CRIMINAL CASES.
IV — THE NECESSITY OF THE PROPOSED PROCEDURE UNDER THE TEST OF MATTER OF BARBER V RUBIN (65 AD2d 811, 72 AD2d 347) as against the degree of invasion into defendant’s BODY, THE LEVEL OF POSSIBLE HARM, AND THE VALUE OF THE EVIDENCE SOUGHT.
At the hearing, on June 12, 1981, the prosecution called New York State Police Investigator Jack Fox, through whom a photo of the body of the deceased, Donna Payant, was introduced.
The photograph depicts her as mutilated by apparent bite marks. The proof at the hearing further established that the medical examiner, Dr. Michael Baden, on May 18, 1981, upon observing Donna Payant’s body, contacted Dr. Lowell Levine, a leading forensic odontologist. Dr. Levine furnished the court with his credentials, from which he *120 may be counted as a forensic odontologist of the widest experience as an expert witness, author, and lecturer in legal and academic circles. He has been consultant to the New York City Medical Examiner, the Kennedy assassination committee, among others, and holds dental school faculty rank, and editorial board positions in several recognized odontological journals. As appears from the court’s own research, Dr. Levine has been cited extensively in both the decisional law and the odontological literature for his numerous writings and appearances. (Point III, infra.)
Dr. Levine testified that he examined photographs of the deceased for purposes of possible bite mark identification. At the time of the examination, Dr. Levine was acquainted with the defendant’s dental characteristics, since he had, in September of 1977, acquired and examined a cast of the defendant’s teeth in an investigation of a Schenectady County homicide, and, on the basis of his examination, had concluded that the defendant, Lemuel Smith, had imposed the bite marks found on the victim, Marilee Wilson.[3]
Dr. Levine, on the basis of these comparisons, concluded, to a reasonable scientific certainty, that the same person administered the bite marks to both Donna Payant at Green Haven and Marilee Wilson in Schenectady County. Dr. Levine added that he requires a cast of defendant’s teeth, at present, to confirm his opinion, that is, to ascertain whether the defendant’s lower teeth are the same now as they were in 1977. Naturally, points of dissimilarity in this examination might well exonerate the defendant.
Dr. Levine made his conclusions after an examination conducted with the use of instruments employed in forensic odontology, including analog image, enhancement dividers, and a Boley gauge, all of which, he stated, enable him to measure the unique configurations of individual bite marks. While the body of Donna Payant revealed torn nipples and mutilation of the abdomen, there was, in Dr. *121 Levine’s judgment, one distinctly discernible bite mark, which formed the basis for his findings.
Notably, his testimony and conclusion was not contradicted, nor did the defendant produce any rebuttal expert or other testimony after a month-long adjournment, granted for the express purpose of affording defendant an opportunity to do so. During this period, the defense received all of the available photographs, and the 1977 cast of the defendant’s teeth, for use in connection with the acquisition of a defense expert.
Dr. Levine testified that the process of casting and photographing defendant’s lower teeth is painless and risk free.
Undeniably, the degree of intrusion is minimal, and the procedure may be completed in a matter of minutes.
At the close of the hearing, it having been asserted that a delay might impair the integrity of the evidence sought, the court asked Dr. Levine to look at the defendant’s lower teeth and determine whether, on the basis of a visual observation only (United States v Wade, 388 US 218, 222; Holt v United States, 218 US 245; People v Cwikla, 46 NY2d 434, 443; United States v Holland, 378 F Supp 144, affd sub nom. Matter of Ehly, 506 F2d 1050, cert den sub nom. Ehly v United States, 420 US 994 [dental examination]), the defendant still had the same number and type of bottom teeth. After doing so, Dr. Levine stated that the defendant did, that his opinion was unchanged, but reiterated his need for a cast and photographs of defendant’s lower teeth.
While the ultimate issue of guilt or innocence must be decided by others, this court need only now determine whether the doctor’s uncontradicted testimony furnishes the requisite probable cause, and whether, on the strength of that testimony, undisputed as of now, the court has the authority to grant the prosecutor’s application.
POINT i
A. FOURTH AND FIFTH AMENDMENT STANDARDS.
As a constitutional matter, the compulsion of nontestimonial evidence generally falls outside pf Fifth Amend *122 ment guarantees (Schmerber v California, 384 US 757; Gilbert v California, 388 US 263; People v Goldberg, 19 NY2d 460, 465). Where the intrusion is substantial or dangerous, constitutional interdictions may be invoked (Adams v State, 260 Ind 663, cert den 415 US 935; Rochin v California, 342 US 165; Bowden v State, 256 Ark 820; People v Smith, 80 Misc 2d 210). But when the intrusion is as brief, innocuous, and transitory as ic is here, the Constitution poses no barrier to the compelled production of corporeal evidence, when acquired under due process safeguards, preceded by arrest, adverserial argument, and a hearing to establish probable cause.[4]
In New York and elsewhere, courts have perceived no constitutional violation upon a compelled submission for dental impressions. In People v Toomer (unreported), the Appellate Bivision, Second Department, denied a motion to set aside a (postindictment) County Court order requiring defendant to submit to a dental procedure to take impressions (NYLJ, March 6, 1979, p 12, col 4.)
Similar relief was authorized in People v Middleton (76 AD2d 762, affg NYLJ, Oct. 19, 1978, p 10, col 5), where the Appellate Division, First Department, noted that a postarrest preindictment odontological order of this type was properly issued at Special Term. (See, also, People v Allah, 84 Misc 2d 500 [postindictment].)
B. PROBABLE CAUSE.
It is well established that the Constitution places restraints on the prosecution in the acquisition of even nontestimonial corporeal evidence (Davis v Mississippi, 394 US 721). The power of the State to acquire the requested odontological evidence must be based upon a showing of probable cause.
*123 Hence, whether viewed in terms of probable cause to support the arrest of Lemuel Smith for murder, or probable cause to justify the requested order to take dental impressions, the court finds that the uncontradicted testimony of Dr. Lowell Levine establishes probable cause that meets the required standards for both.
POINT II — POSTARREST, PREINDICTMENT AUTHORITY.
The defendant claims that the prosecutorial discovery statutes (CPL 240.40, subd 2, pars [v], [vii]) apply only when an “indictment, superior court information, prosecutor’s information, or information is pending” (CPL 240.40, subd 1). The defendant is charged by felony complaint, and the case awaits Grand Jury presentation. Hence, the defendant argués, the court is not statutorily empowered to grant the application.
The last sentence of CPL 240.40 (subd 2), however, reads as follows: “This subdivision shall not be construed to limit, expand, or otherwise affect the issuance of a similar court order, as may be authorized by law, before the filing of an accusatory instrument consistent with such rights as the defendant may derive from the constitution of this state or of the United States.” (Emphasis ours.)
Because the defendant has been arrested and is charged with a felony complaint, this court, as a superior court (CPL 10.10, subd 2), has authority before the filing of an indictment, to order the procedure for the use of such evidence by a County Court Grand Jury (CPL 190.10). The arrest, for the reasons aforesaid, is supported by probable cause, and, together with the evidence adduced at the hearing, provides the procedural basis for granting the application (cf. People v Vega, 51 AD2d 33; Matter of District Attorney of Kings County v Angelo G., 48 AD2d 576, app dsmd 38 NY2d 923; Matter of Alphonso C., 50 AD2d 97, app dsmd 38 NY2d 923 [in which no criminal actions had been commenced against defendants]).
The most recent appellate expression, as to the stage in which such nontestimonial orders may be issued by a superior court is Matter of Abe A. (81 AD2d 362), in which the First Department held that absent a probable cause arrest, the Supreme Court lacked authority to compel the *124 production of a blood sample. Matter of Abe A. confirms this court’s view that the proposed odontological order is properly issuable, as a postarrest, preindictment vehicle (People v Middleton, 76 AD2d 762, supra). At bar, the court has exceeded the procedural requirements imposed in Middleton, where the order was held properly issuable, after arrest, even without a hearing.
Without constitutional infringement, the Grand Jury could compel the defendant to furnish the evidence sought (United States v Dionisio, 410 US 1; United States v Mara, 410 US 19), but under New York law, the price could be immunity (People v Perri, 72 AD2d 106). Under these circumstances, the Appellate Division, Second Department, noted that the proper procedure would be for the prosecution to apply to Special Term for an order compelling the production of the physical evidence (People v Perri, supra, at p 112). This is exactly what the prosecution has done here.
POINT III — THE EFFICACY OF ODONTOLOGICAL EVIDENCE.
The New York test to determine admissibility of expert testimony (comparable to the nationally recognized Frye test [Frye v United States, 293 F 1013]) is whether the procedure has gained general scientific acceptance in its field (People v Allweiss, 61 AD2d 74, 79, affd 48 NY2d 40).
In New York, the acquisition of odontological evidence has been approved, with no serious dispute as to its viability, in the three odontological cases cited above (p 122). Courts of other jurisdictions, in what appears to be an uninterrupted line of authority, have similarly ruled, rejecting claims founded upon constitutional, scientific, and evidentiary bases.[5]
*125 The acceptance of odontological evidence as a means for identification is established in dental literature as well as decisional law. Forensic odontology is at least 100 years old (Cameron & Sims, Forensic Dentistry 129 [1973]). Its use as a vehicle for criminal identification achieved early recognition in Scandinavia (Dinkel, The Use of Bite Mark Evidence as an Investigative Aid, 19 J For Sci 535 [1974]; Keiser-Nielsen, Bite Mark Investigation, International Conference on Forensic Dentistry 20 [1969]), and, internationally (Furness, A New Method for the Identification of Teethmarks in Cases of Assault and Homicide, 124 British Dent J 261 [1968]; Suzuki, Suzuki & Hadano, Criminal Case Involving Bite Marks, 15 Dent Abstract 475 [1970]), and soon gained considerable comment and acceptance in American journals. The basic premise is the unique nature of individual dentition (Gustafson, Forensic Odontology 140, 162 [1966]); and the virtually infinite number of individual bite configurations (Luntz & Luntz, Handbook for Dental Identification 186 [1973]).
The odontologist, as Dr. Levine explained, examines the “mirror image” upon the bitten object for the arrangement and characteristics of the dentition (Glass, Andrews & Jones, Bite Mark Evidence, J For Sci 638 [1980]), by the use of photographs and impressions (Rawson, Bell & Kinard, Radiographic Interpretation of Contrast Media-Enhanced Bite Marks, 24 J For Sci 898 [1979]).
Such examinations and conclusions have been frequently made from direct or photographic examination of human skin tissue and are prominent in the literature (Van Hecke, Comments on a Bite on a Breast in a Murder Case, 6 Med Sci & L 47 [1966]; Gladfelter, Dental Evidence [1975]; Harvey, Dental Identification & Forensic Odontology [1976]; Barbanel & Evans, Bite Marks in Skin — Mechanical Factors, 14 J For Sci 235 [1974]). The commentators have pointed out that, as with fingerprints, much depends on the quality and number of points of concordance, and that given a good impression of even five teeth, the total number of possible arrangements as combinations could be calculated to be 59,049 (Vale, Sognnaes, Felando *126 & Noguchi, Unusual Three Dimensional Bite Mark Evidence in a Homicide Case, 21 J For Sci 642, 650).[6]
POINT IV--THE MATTER OF BARBER V RUBIN (65 AD2d 811, 72 AD2d 347) Test.
No authority has been submitted or found which seriously questions the legal and medical acceptability of bite mark evidence. The “probative value” test of Barber is easily satisfied, when measured against Dr. Levine’s testimony. The Barber case held (72 AD2d 347, 352, supra) that “Before an individual may be compelled to submit to an examination or a test of his body, the results of which may be used in the investigation or prosecution of a criminal offense, probable cause for the necessity of the procedure proposed must be demonstrated”. The burden has been clearly met, as discussed above.
Dr. Levine testified that the process of casting and photographing the defendant’s lower teeth is painless, without risk, and can be completed in a matter of minutes.
The court further finds that the need for this evidence has been established.
Thus, under the Barber analysis, the court finds that the People have justified their request, and that there are no countervailing considerations which warrant its denial.
It should be noted that the proposed procedure is, of course, equally, if not more, important as a means of possible exclusion of the suspect (Sopher, Forensic Dentistry 140 [1976]), a circumstance which, in terms of truth finding, should not be kept from a Grand Jury, particularly in view of the defendant’s public assertions that he is being conspiratorially framed.
*127 Dr. Levine has testified that if the teeth do not match after the requested examination, he would alter his opinion.
The ultimate evidentiary question, on the issue of identity, will turn on the degree of weight the fact finder gives to the expert or experts in measuring all the proof upon the applicable Grand Jury or trial standard. The court, however, need not weigh the evidence in terms of conclusive scientific certainty (Strom, Investigation of Bite Marks, 42 J Dent Research 312 [1963]), but merely in determining the sufficiency of the arrest and probable cause. Clearly, the standard is met. Moreover, the desirability of a cast or impression is stressed in the literature (Dinkel, The Use of Bite Mark Evidence as an Investigative Aid, 19 J For Sci 535 [1974]), and the prosecution has made out a case for it.
Accordingly, the court grants the motion, and directs defendant’s appearance, on August 3, 1981, at 10:00 a.m., before this court, for implementation of the order, to be immediately conducted at an appropriate dental facility. Defense counsel may be present during the procedure, with an odontologist, if he be so advised.
The date for this procedure may not be adjourned by consent or otherwise, without a court order or an appellate stay.

. The District Attorney of Dutchess County originally brought on the motion. During its pendency, and owing to conflict of interest, the District Attorney was disqualified and has been replaced by William E. Stanton, who, as Special District Attorney (County Law, § 701), in open court on July 13,1981, reaffirmed his intention to adopt the motion (a companion motion for hair removal has been withdrawn). By letter dated July 8,1981, the defendant’s attorney, C. Vernon Mason, stated that he was uncertain as to whether the Special District Attorney was pursuing the motion, but on July 13, 1981, acknowledged to the court, by telephone, that he had since spoken with Mr. Stanton and that both sides wanted the court to consider the matter fully submitted, with a time allowance for the defendant to seek appellate review should the decision be adverse to him. The court agreed to excuse Mr. Mason’s appearance and recounted the conversation on the record.

. At oral argument, the defense stipulated that the County Court was the proper tribunal in which to bring this motion, a formal charge having been filed in the local criminal court (Town of Beekman Justice Court). It was understood, and openly stated by both sides, that this court, as both a superior court and local criminal court (CPL 10.10, subd 2; subd 3, pars [fj, [g]), has jurisdiction to entertain the application at Special Term. Defendant contended, however, that notwithstanding the jurisdiction of this court to hear and decide, neither this court nor any other court has authority to grant the relief sought under the facts here adduced.

. Defendant was indicted by a Schenectady County Grand Jury for the Wilson murder. On August 8,1980, in Schenectady County Court, the District Attorney moved, and the court granted, the dismissal of that indictment on the ground that defendant has been convicted of crimes in two counties (Schenectady and Albany) for which he was to serve two consecutive sentences of 25 years to life as a persistent felony offender, and that an additional prosecution would serve no purpose. One such conviction has been affirmed (People v Smith, 77 AD2d 712, mot for lv to app den [per Cooke, Ch. J.] 51 NY2d 776).

. The proposed acquisition is to be favorably compared with others previously authorized, and upheld by appellate courts (People v Cwikla, 46 NY2d 434, supra [compelled wearing of artificial hair]; People v Ballot, 20 NY2d 600 [compelled utterances]; United States v Dionisio, 410 US 1 [voice exemplar]; People v Sanders, 58 AD2d 525 [eyeglass removal]; United States v Mara, 410 US 19 [handwriting exemplar]; Cupp v Murphy, 412 US 291 [fingernail scrapings]; United States v Crowder, 543 F2d 312, cert den 429 US 1062 [surgery, bullet removal]; United States v West, 517 F2d 483, cert den 423 US 948 [hair clippings]; Ewing v State, 160 Ind App 138 [urine sample]; United States v Love, 482 F2d 213, cert den sub nom. Oglesby v United States, 414 US 1026; United States v Bridges, 499 F2d 179 [acetone hand swabbing]; Blackford v United States, 247 F2d 745, cert den 356 US 914, and Brent v White, 398 F2d 503, cert den 393 US 1123 [examination of private parts]).

. In California, People v Marx (54 Cal App 3d 100), People v Watson (75 Cal App 3d 384, 401), People v Slone (76 Cal App 3d 611); in Illinois, People v Stewart (110 Ill App 2d 435, affd 46 Ill 2d 125), People v Milone (43 Ill App 3d 385), People v Johnson (8 Ill App 3d 457); in Vermont, State v Howe (136 Vt 53); in Oregon, State v Routh (30 Ore App 901); in Arizona, State v Garrison (120 Ariz 255); in Kansas, State v Peoples (227 Kan 127); in Alabama, Matter of Dolvin (391 So 2d 677); in Missouri, State v Sager (600 SW2d 541), State v Kleypas (602 SW2d 863); in South Carolina, State v Jones (273 SC 723); in Texas, Doyle v State (159 Tex Cr Rep 310), Patterson v State (509 SW2d 857); in North Carolina, State v Temple (302 NC 1); in Indiana, Niehaus v State (265 Ind 655, cert den 434 US 902). While the courts have been uniform in finding scientific acceptability, the same level of enthusiam is not present in the writings of two law school commentators (51 S Cal L Rev 309; 32 SC L Rev 119; see, also, Ann., 77 ALR3d 1122; 25 Am Jur, Proof *125 of Facts, Identification of Toothmarks, p 765).

. See, also, Furuhata & Yamamoto, Forensic Odontology (1967); Levine & Beadhler, Forensic Odontology — A Routine Case and Commentary, 36 NYS Dent J 199 (1970); De Vore, Bite Marks for Identification? — A Preliminary Report, 11 Med Sci & L 144 (1971); 13 Med Sci & L 207 (1973); Levine, Forensic Odontology, 41 FBI Law Enf Bull 6 (1972); Bite Mark Evidence, 21 Dental Clinics of North America 145 (1977); Forensic Odontology, 22 Australian Dent J 481 (1977); Beckstead, Rawson & Giles, Review of Bite Mark Evidence, 99 JADA 69 (1979); Goodbody, Turner & Turner, The Differentiation of Toothed Marks, Report of a Case of Special Interest, 16 Med Sci & L 44 (1976); McDonald, Bite Mark Recognition & Interpretation, 14 J For Sci 229 (1974); Sognnaes & Therrell, Bite Mark Lesions in Human Skin Caused by an Unequivocally Identified “Suspect”, 3 J Cal Dent Assn 50 (1975); Butler, The Value of Bite Mark Evidence, 1 Int J For Dent 23 (1973); Woolridge, Legal Problems of the Forensic Odontologist, 18 J For Sci 40 (1973); Holley, Forensic Odontology: Investigating Bite Marks, 2 For Sci Dig (1976); Dorion, Forensic Odontology in Canada, 11 Can Soc Forensic Sci J 143 (1978).